UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RHONDA BADGER, | ) |
| Plaintiff, | ) |
| vs. | ) NO. 1:11-cv-00778-MJD-TWP |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY | ) |
| Defendant. | ) |

**Entry on Judicial Review**

Plaintiff Rhonda Badger[1] requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). *See* 42 U.S.C. §§423. The Court rules as follows.[2]

**I. Procedural History**

Badger applied for DIB on December 13, 2007, alleging a disability onset date of July 31, 2007. She was insured for purposes of DIB through March 31, 2012. Badger's application was denied initially and upon reconsideration. Thereafter Badger requested a hearing, which was held before Administrative Law Judge ("ALJ") Stuart T. Janney on June 11, 2010. The ALJ denied her application on July 9, 2010, and the Appeals Council denied review on May 24, 2011, making the ALJ's decision the agency's final decision for purposes of judicial review. Badger

---

[1] Badger's name was Rhonda Whisman at the time of her initial application.
[2] The parties consented to the Magistrate Judge conducting all proceedings and ordering the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Any objections to or appeal of this decision must be made directly to the Court of Appeals in the same manner as an appeal from any other judgment of a district court. 28 U.S.C. § 636(c)(3).

filed her Complaint with this Court on June 8, 2011.

## II. Factual Background and Medical History

Badger was 29 years old on her alleged disability onset date, and 32 years old on the date of the ALJ's decision. She has a high school GED and last worked as a waitress for ten months ending in July 2007. Badger has two minor children and was not married at the time of the hearing. In 2002, Badger was diagnosed with lumbar degenerative disc disease, lumbar radiculopathy, and chronic lower back pain. Badger was also diagnosed with fibromyalgia and irritable bowel syndrome ("IBS"), and she reported episodes of urinary incontinence. A consultative mental status examination also noted a diagnostic impression of depression and anxiety. Badger complained that she had lower back pain radiating into both legs, that standing and walking for prolonged periods aggravated her pain.

Badger's back conditions were treated with epidural steroid injections and numerous pain, anti-inflammatory and anti-depressant medications. One of her treating physicians, Dr. Matthew Surburg, M.D., opined that one of the likely causes of Badger's back pain was increased anxiety; however, two MRIs also showed that Badger has degenerative disc disease and disc herniation.

## III. Applicable Standard

Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382(a)(3)(A); 20 C.F.R. § 416.905. In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the

national economy, considering her age, education, and work experience. 42 U.S.C. § 1382(a)(3)(B).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th

Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into his reasoning ... [and] build an accurate and logical bridge from the evidence to his conclusion." *Id.*

## IV. The ALJ's Decision

The ALJ first found that Badger had met the insured status requirements of the Social Security Act through March 31, 2012. Applying the five-step analysis, the ALJ found at step one that Badger had not engaged in substantial gainful activity since July 31, 2007, the alleged onset date. At step two, the ALJ found that Badger's medically determinable impairments included lumbar and cervical degenerative disc disease with right lower extremity S1 radiculopathy, mild carpal tunnel syndrome, irritable bowel syndrome, fibromyalgia syndrome, obesity with deconditioning, depression and anxiety. At step three, the ALJ determined that Badger does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ determined that Badger had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b), with the exception of handling and fingering frequently with the bilateral upper extremities, frequently ascending ramps and/or stairs and balance, never climb ladders ropes or scaffolding, occasionally stoop, kneel, crouch, and/or crawl, must work in an environment with flexible break times with access to bathroom facilities, and is limited to understanding, remembering, and carrying out one or two step instructions.

At step four, the ALJ determined that Badger does not have the capacity to perform her past work. At step five, the ALJ determined that, considering Badger's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she could perform.

## V. Discussion

Badger presents four arguments as to why the ALJ's decision was in error and the case should be remanded. Specifically, Badger claims that: (1) the ALJ's step three finding that Badger did not have an impairment or combination of impairment that medically equals Listing 1.04 had no basis in the record, was merely arbitrary, and ignored the evidence; (2) the ALJ's RFC determination that Badger could perform "light work" was in error; (3) the ALJ improperly discounted Badger's treating physician's functional assessment by according it "little weight;" (4) the ALJ improperly found that there was no record of Badger's urinary incontinence.

### A. The ALJ's Step Three Finding

Badger argues that her back impairment meets the requirement for Listing 1.04 Disorders of the Spine and that the ALJ ignored evidence of her disability. In order to meet Listing 1.04A, a claimant with degenerative disc disease must have evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss, *and* if there is involvement of the lower back, positive straight-leg raising test. 20 C.F.R. Part 404, Appendix 1, § 1.04A. To meet Listing 1.04C, a claimant must demonstrate that she has lumbar spinal stenosis resulting in an inability to ambulate effectively. 20 C.F.R. Part 404, Appendix 1, § 1.04C. An inability to ambulate effectively means an extreme limitation in the ability to walk, and having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive

device or devices that limits the functioning of both upper extremities. 20 C.F.R. Part 404, Appendix 1 § 1.00B(2)(b). Examples of ineffective ambulation include the inability to walk without the use of a walker, two crutches or two canes. *Id.*

Badger focuses on the results of a 2003 and 2009 MRI to demonstrate that she meets the criteria for Listing 1.04A. These MRIs show that Badger has degenerative disc disease and disc herniation. However, an impairment cannot meet a listing merely based upon a diagnosis, but instead must satisfy all of the criteria in the listing, and it is the plaintiff's burden to show that she met or medically equaled all of these requirements. 20 C.F.R. 404.1525(d); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The MRI shows that Badger has a disc protrusion at the L4-5 level causing mild spinal canal stenosis, a degenerated disc and moderately sized disc protrusion at L5-S1 causing mild to moderate stenosis. [Tr. 335]. Badger does not, however, point to any evidence of a positive straight-leg raising test, which is specifically required to meet the criteria for Listing 1.04A, and there is no evidence in the record documenting such a test result. In fact, the record shows evidence of negative straight leg raising tests [Tr. 757], which is contrary to Badger's assertion that there was no specifically stated straight leg test in the file and her implication that such a test had been performed but had not been included in the file. [Dkt. 18 at 11]. Thus, Badger has not show that she meets the requirements of Listing 1.04A.

Badger also has not demonstrated that she met the requirements for Listing 1.04C. There is no evidence that Badger required a walker, crutches or canes to ambulate, nor is there any evidence that Badger had motor or reflex loss due to atrophy. The medical records from Dr. Surburg also indicate that Badger had normal gait [Tr. 661, 669, 672, 686, 691, 702], further supporting the ALJ's conclusion that Badger did not meet the criteria for Listing 1.04C. Thus, Badger has failed to meet her burden of showing that her back impairment satisfies all of the

requirements for listing 1.04, and substantial evidence in the record supports the ALJ's step three finding.

B. **The ALJ's RFC Determination**

Badger next argues that the ALJ's RFC determination that she could perform light work with some limitations was not supported by substantial evidence and that he ignored contrary evidence of her MRI results, her treating physicians' opinions, and her hearing testimony. In addition, Badger argues that the ALJ failed to mention her complaints of pain when posing the hypotheticals to the Vocational Expert. When considering the appropriateness of a hypothetical question posed to a vocational expert, the hypothetical question must be supported by the medical evidence in the record. *Cass v. Shalala*, 8 F.3d 552, 555-56 (7th Cir. 1993). Before determining whether the hypothetical question was appropriate, the Court must first determine whether the ALJ performed a proper RFC analysis.

Badger alleges that the ALJ's disregard of her complaints about pain in his RFC analysis and failure to mention her constant pain in the hypothetical posed to the Vocational Expert was reversible error. The ALJ found Badger's complaints about the intensity, persistence, and limiting effects of her pain to be not credible because they were inconsistent with her activities of daily living and the longitudinal medical record. [Tr. 14]. The Seventh Circuit has determined that, when doing a credibility determination of the claimant's complaints about pain, the ALJ must take into account all evidence that both supports the plaintiff's claims and those that support denial. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). "Both the evidence favoring the claimant as well as the evidence favoring the claim's rejection must be *examined*, since review of the substantiality of evidence takes into account whatever in the record fairly detracts from its weight." *Id.* (quoting *Bauzo v. Bowen*, 803 F.2d 917, 923 (7th Cir.1986))

7

(emphasis in original). The ALJ cannot merely ignore the claimant's allegations when there are medical findings that reasonably support a claimant's complaint of pain. *Id*. at 887-88. Where the ALJ only mentions medical evidence favoring denial and his analysis does not make it clear that he considered the record as a whole or attempted to explain why evidence favorable to the claimant did not outweigh evidence upon which he relied, a redetermination of the claimant's RFC is required. *Id.* at 888-89.

The ALJ supported his credibility determination by citing to a single medical report where Badger reported that she was independent in her activities of daily living, the fact that she has two children and a dog, and that she uses marijuana. However, the ALJ failed to examine whether these activities were minimal or whether they established that Badger was capable of engaging in substantial physical activity such as that posed in the hypothetical to the Vocational Expert. The ALJ ignored the fact that both of Badger's children that she cared for were teenagers (age 13 and 14) at the time of the hearing [Tr. 30], which is less physically demanding than caring for children of a younger age. He also ignored information in the same medical record he cited indicating that she cared for a dog that Badger has "difficulty with housework" and that her children do the yard work for her. [Tr. 548]. In addition, the ALJ does not adequately explain how Badger's marijuana consumption and her ability to procure it indicates "higher functional abilities" than she asserted at the hearing, as Badger's method of procuring the drugs were never discussed or analyzed, and there is no indication that an increased amount of physical exertion was required. While this Court recognizes that marijuana consumption is an illegal activity, that fact alone cannot be used as a basis for discounting a claimant's credibility with regard to her subjective complaints about pain.

In terms of the medical evidence that the ALJ claimed contradicted Badger's statements concerning pain, the ALJ asserts that Badger's medical regimens were "largely successful." [Tr. 14]. However, while the records cited by the ALJ indicate that Badger's mental impairments responded well to her medications, they are also fraught with evidence that Badger's *pain* was not well controlled by medication. [Tr. 382 ("apparent discomfort" in turning neck); 649 ("pain is poorly controlled"); 653 ("pain meds are not working"); 654 ("pain has been very difficult to control….taking Methadone at different times without relief"); 661 ("methadone has given her less effectiveness than we had hoped for"); 669 (back pain "continues to be a problem")]. The ALJ does not make any attempt to explain why this other evidence in the record that favors Badger's subjective complaints about pain was overcome by the evidence upon which he relied. While this Court is not permitted to reweigh evidence, the ALJ's failure to examine evidence that weighed in favor of the claimant constitutes reversible error requiring remand. Accordingly, the ALJ must conduct a reevaluation of Badger's complaint of pain with due regard for the full range of medical and testimonial evidence, and a redetermination of Badger's residual functional capacity is necessary.

**C. Rejection of Treating Physician's Opinion**

Badger alleges that the ALJ erred in discounting her treating physician's opinion and according such opinion "little weight." Dr. Surburg opined that Badger was functionally unable or very limited to stand, walk, sit, bend, lift, push/pull or operate machinery, and that she was unable to return to full time employment. The ALJ found that Dr. Matthew Surburg's physical functional capacity statement was inconsistent with his own objective findings and the record as a whole. [Tr. 16].

Generally, a treating physician's opinion regarding the nature and severity of a claimant's medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record. *Clifford v. Apfel,* 227 F.3d 863, 870 (7th Cir. 2000). Medical evidence may only be discounted if it is internally inconsistent or inconsistent with other evidence. 20 C.F.R. § 404.1527(c); *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995). The ALJ makes the conclusory statement that Dr. Surburg's opinion is inconsistent to his own findings and cites to exhibits 17F (Tr. 659-667), 18F (Tr. 668-682) and 21F (Tr. 698-716) in support of this determination, and states that Dr. Surburg reported "very few objective findings" that would justify his opinion on Badger's functional limitations. [Tr. 16]. The Commissioner also cites a number of medical records that he claims "consistently report largely normal examination findings" and do not contain evidence that Badger is limited to the extent that Dr. Surburg opined. [Dkt. 25 at 15]. However, closer examination of the medical records cited by the ALJ and the Commissioner reveal consistent reports of pervasive, severe pain that is difficult to control, numerous prescriptions for narcotic pain medications (including Methadone, OxyCotin, Percoset and Norco) and worsening pain with exertion. [Tr. 661, 671-72, 700-03, 708-13]. The ALJ fails to explain how these records are inconsistent with Dr. Surburg's functional capacity assessment. The records cited by the Commissioner which he claims report "normal findings" further discredit the ALJ's determination, as many of these records predate Badger's onset date and related to her treatment for smoking cessation. [Tr. 267-92, 296-97, 304-05, 390-97, 409-10, 418-19]. In light of the insufficient analysis of these medical records, as well as the deficiencies cited above with regard to the RFC analysis, this Court finds that the ALJ improperly accorded "little weight" to Dr. Surburg's opinion and must reexamine the proper weight to be given to Dr. Surburg's findings on remand.

### D. Disregard of Evidence Urinary Incontinence

Finally, Badger also argues that the ALJ erred by discounting her complaints of urinary incontinence. Urinary incontinence constitutes an impairment under the Social Security Act that must be considered to determine whether a claimant is disabled. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003). According to 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.00K(4), bladder incontinence may be caused by degenerative disc disease and should be evaluated under listing 1.04. A report by Dr. John Chase suggests that Badger's urinary incontinence may be caused by myelopathy[3] [Tr. 482-83] but there is no other record confirming that Badger's urinary incontinence is indeed caused by her degenerative disc disease or herniation. The ALJ's conclusion that there was no actual diagnosis of urinary incontinence is supported by the record.

Nevertheless, even if Dr. Chase's records do constitute a "diagnosis" of urinary incontinence, the ALJ's determination would constitute harmless error because the ALJ found in his RFC assessment that Badger must work in an environment that allows flexible break times with access to bathroom facilities. [Tr. 13]; *see Smith v. Massanari*, 2001 WL 936123 at *2 n. 6 (reduction of RFC to allow for frequent access to bathroom facilities does not suggest a finding of lack of credibility of claimant regarding allegations of urinary incontinence). Although the ALJ's consideration of Badger's urinary incontinence does not constitue reversible error, the ALJ must still consider this factor upon remand when reassessing Badger's RFC in accordance with the reasoning stated above.

### VI. Conclusion

---

[3] Myelopathy is defined as "any functional disturbance and/or pathological change in the spinal cord; often used to denote nonspecific lesions…" http://medical-dictionary.thefreedictionary.com/myelopathy, last accessed on May 10, 2012.

For the foregoing reasons, this Court hereby **REVERSES** and **REMANDS** this case for further proceedings consistent with this opinion.

SO ORDERED.

Dated: 05/15/2012

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Thomas E. Williams
teqw@aol.com